1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**DISTRICT OF NEVADA**

10

ARMIS ARRENDONDO,                    )
                                      )
11                        Petitioner, )        2:07-cv-01312-JCM-GWF
                                      )
12    vs.                             )        **ORDER**
                                      )
13    D.W. NEVEN, *et al.*,           )
                                      )
14                        Respondents.)
                                      )
15    _____/

16

This action is a *pro se* petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by a
17
Nevada state prisoner.  This matter comes before the court on the merits of the remaining ground of
18
the petition.
19

**I.  Procedural History**
20

On December 18, 2003, the state sought a grand jury indictment against petitioner for one
21
count of possession of a stolen vehicle and one count of possession of stolen property.  (Exhibit 2).[1]
22
The indictment warrant was issued on December 19, 2003.  (Exhibit 5).  Petitioner filed a state
23
habeas petition on December 2, 2004.  (Exhibit 9).  On December 15, 2004, petitioner elected to
24
represent himself subsequent to a *Faretta* canvas.  (Exhibit 21).  The court found that petitioner was
25

26

--------

[1]  The exhibits referenced in this order are found in the court's record at ECF No. 19-21.

1   competent to waive his right to counsel.  (*Id*.).  On February 1, 2005, petitioner filed a petition for a

2   writ of mandamus with the Nevada Supreme Court, which the court denied.  (Exhibits 28 and 29).

3   On March 8, 2005, the district court denied the habeas petition.  (Exhibits 33 and 34).

4        Petitioner's two-day trial, at which petitioner represented himself, began on March 21, 2005.

5   (Exhibits 36 and 37).  The jury found petitioner guilty on both counts.  (Exhibit 39).

6        On March 24, 2005, the state filed a notice of intent to seek punishment as a habitual

7   criminal.  (Exhibit 40).  On April 4, 2005, petitioner filed a motion to appoint counsel, which he then

8   withdrew on April 19, 2005.  (Exhibits 44, 50, and 55).

9        On April 19, 2005, petitioner filed an "amended information to seek relief via appeal of writ

10  of habeas corpus." (Exhibit 49).  Petitioner filed other motions on April 26, 2006.  (Exhibits 51-53).

11       On April 28, 2005, petitioner was sentenced as a habitual criminal to a life sentence with

12  parole eligibility at ten years on each count, to run concurrently.  (Exhibit 54).

13       On May 3, 2005, the district court denied petitioner's motions for appeal from the writ of

14  habeas corpus and motion for a new trial.  (Exhibits 56 and 57).

15       Petitioner filed his notice of appeal to the Nevada Supreme Court on May 4, 2005.  (Exhibit

16  59).  The Nevada Supreme Court remanded the case for the purpose of appointing counsel.  (Exhibit

17  60).  Counsel was appointed on June 14, 2005, and entered an appearance on June 20, 2005.

18  (Exhibits 61-63).

19       On August 10, 2005, petitioner filed a pro per appeal and/or "amended information for a writ

20  of mandamus," which was denied by the Nevada Supreme Court on August 31, 2005.  (Exhibits 64

21  and 65).

22       Counsel for petitioner filed his opening brief on December 19, 2005, alleging three grounds

23  for relief.  (Exhibit 69).  The three grounds for relief were as follows: (1) the state's failure to advise

24  the district court that petitioner might be charged as a habitual criminal made his waiver of counsel

25  invalid; (2) the district court erred when it failed to permit petitioner adequate time to produce his

26

2

trial witnesses; and (3) the district court abused its discretion in awarding petitioner only 2 days credit for time served, as he had been incarcerated 577 days prior to sentencing.  (Exhibit 69).  On April 4, 2006, petitioner filed a motion to dismiss counsel and for the appointment of alternate counsel.  (Exhibit 72).  The Nevada Supreme Court denied petitioner's pro per motion to remove counsel.  (Exhibit 73).

On June 29, 2005, the Nevada Supreme Court issued an order affirming in part and remanding, in which petitioner's first two claims were denied.  (Exhibit 74).  The Nevada Supreme Court ruled that the district court erred in granting petitioner only two days credit for time served, and remanded the case to district court for a rehearing on that issue.  (Exhibit 74).  Remittitur issued on July 25, 2006.  (Exhibit 75).  After a hearing on July 27, 2006, the state filed an amended judgment of conviction, amending petitioner's sentence to credit him with 577 days credit for time served.  (Exhibit 76).

Petitioner filed a federal habeas petition in this court on October 27, 2006, as case number 2:06-cv-1369-PMP-GWF.  That petition was dismissed without prejudice.  (2:06-cv-1369-PMP-GWF at Docket #2).  Petitioner then re-filed his federal petition on September 26, 2007, under the instant case number.  Petitioner's original petition in the instant action alleges two grounds for relief.  (ECF No. 1).

By order filed June 20, 2008, the court granted petitioner's unopposed motion for leave to file an amended petition.  (ECF No. 16).  The court directed petitioner to file an amended petition within thirty days.  (*Id.*).

On June 17, 2008, petitioner filed a "motion for leave of court to file [an] extended § 2254 [petition]."  (ECF No. 13).  A supplemental habeas petition, which added seventeen grounds to the two grounds in the original petition, was attached to the motion.  (ECF No. 13).  Respondents opposed the granting of petitioner's motion to file an extended § 2254 petition.  (ECF No. 14).

3

1   By order filed August 21, 2008, the court granted petitioner's motion to amend and directed

2 the clerk of court to file the amended (supplemental) petition that was attached to petitioner's

3 motion.  (ECF No. 23).  The court directed respondents to file a response to all of the grounds raised

4 in the original petition and the amended petition.  (ECF No. 23).  The amended (supplemental)

5 petition was filed by the clerk on the same date, August 21, 2008.  (ECF No. 24).  One day earlier,

6 respondents filed the instant motion to dismiss.  (ECF No. 18).

7   On February 2, 2009, this court issued an order finding that ground 2 was unexhausted, and

8 that grounds 3-19 were untimely and did not relate back to the original petition.  (ECF No. 28).  The

9 court dismissed grounds 3-19.  (*Id.*).  On February 12, 2009, petitioner filed his formal abandonment

10 of unexhausted ground 2.  (ECF No. 29).  Respondents have filed an answer to remaining ground 1

11 of the petition.  (ECF No. 30).  Petitioner filed a reply.  (ECF No. 31).

12 **II.  Federal Habeas Corpus Standards**

13   The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

14 provides the legal standard for the court's consideration of this habeas petition:

15     An application for a writ of habeas corpus on behalf of a person
in custody pursuant to the judgment of a State court shall not be

16 granted with respect to any claim that was adjudicated on the merits in
State court proceedings unless the adjudication of the claim –

17

18     (1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

19

20     (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceeding.

21

22   AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in

23 order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to

24 the extent possible under law."  *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court decision

25 is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254,

26

1   "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's]

2   cases" or "if the state court confronts a set of facts that are materially indistinguishable from a

3   decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme

4   Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529

5   U.S. 362, 405-406 (2000), and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

6        A state court decision is an unreasonable application of clearly established Supreme Court

7   precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

8   governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

9   principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,

10  529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more

11  than merely incorrect or erroneous; the state court's application of clearly established federal law

12  must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

13       In determining whether a state court decision is contrary to, or an unreasonable application of

14  federal law, the court looks to the state court's last reasoned decision. *See Ylst v. Nunnemaker*, 501

15  U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert.*

16  *denied*, 534 U.S. 944 (2001). Moreover, "a determination of a factual issue made by a State court

17  shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the

18  presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

19  **III. Discussion**

20       In ground one of the federal habeas petition, petitioner alleges that his waiver of his right to

21  counsel was not knowing and intelligent, because he was not made aware of the State's intent to seek

22  application of the habitual criminal statute. (ECF No. 4). Petitioner raised this issue on direct

23  appeal. The Nevada Supreme Court addressed and rejected the claim, as follows:

24

25

26

Arrendondo contends that his waiver of his right to counsel was invalid because the district court did not properly apprise him of his possible maximum sentence if convicted. The district court informed him that he would be sentenced to a maximum of twenty years in prison if convicted. However, after the jury convicted Arrendondo, the State sought his adjudication as a habitual criminal, which resulted in two concurrent life sentences with parole eligibility in ten years. Arrendondo argues that under <u>Scott v. State</u>, the district court must accurately inform a defendant of the possible sentence he would face if convicted in order for a waiver of the right to counsel to be knowing and intelligent.

District courts are entitled to deference in their decisions to permit a defendant to waive the right to counsel. The judge need only be convinced that the defendant made his decision with a clear comprehension of the attendant risks.

Arrendondo's reliance on <u>Scott</u> is misplaced. <u>Scott</u> reaffirmed an earlier requirement articulated by this court that defendants seeking self-representation must be informed of the possible maximum sentence they would receive if convicted in order for a waiver of the right of counsel to be valid. This court, however, has since concluded that there are no specific matters that should be part of a district court's canvass of the defendant to determine whether a waiver of the right to counsel is valid. The test of a valid waiver of counsel is not whether specific warnings or advisements were given but whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case.

Here, the district court engaged in an extensive canvass of Arrendondo before finally concluding that Arrendondo's waiver of his right to counsel was knowing and intelligent. Specifically, the district court (1) stated several times that self-representation was a bad idea; (2) informed Arrendondo of the disadvantages attendant to his lack of legal knowledge, the greater knowledge of the prosecutor, and the fact that Arrendondo would not be able to claim ineffective assistance of counsel if convicted; (3) warned Arrendondo that he would be required to comply with the rules of procedure and evidence as if he were an attorney; (4) inquired into Arrendondo's mental health; (5) advised Arrendondo of the elements of the crimes with which he was charged; and (6) informed Arrendondo of a possible twenty-year maximum sentence if convicted.

At the time of the canvass, the district court was not aware that the State would later seek sentencing of Arrendondo as a habitual criminal. Although the district court indicated that Arrendondo would face a maximum penalty of twenty years if convicted, rather than life, the otherwise extensive canvass of Arrendondo demonstrates that he

6

1                   understood the dangers and disadvantages of self-representation.
Therefore, Arrendondo's waiver of his right to counsel was knowing

2                   and intelligent and, thus, valid.

3 (Exhibit 74, at pp. 2-4) (footnotes, citations, and internal quotations omitted).

4        The United States Supreme Court addressed a criminal defendant's right to waive counsel in

5 *Faretta v. California*, 422 U.S. 806, 835 (1975). The canvass conducted by the court when a

6 criminal defendant waives his right to counsel need not follow a particular script, but defendant must

7 be informed of the charges, the right to counsel, the range of punishments, as well as the dangers and

8 disadvantages of self-representation. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). A knowing and

9 intelligent waiver requires awareness of the charges, possible penalties, and dangers and

10 disadvantages of self-representation. *United States v. Robinson*, 913 F.2d 712, 716 (9th Cir. 1990).

11        In the instant case, the Nevada Supreme Court considered the trial court transcript of the

12 *Faretta* canvass that took place on December 15, 2004. (Exhibit 21). This court has reviewed the

13 same in detail. The canvass consisted of extensive conversation between the trial court judge and

14 petitioner. (Exhibit 21). At the hearing, the trial court judge admonished petitioner that representing

15 himself was probably unwise and that he would face many challenges in self-representation.

16 (Exhibit 21, at pp. 3-4). Petitioner was informed that he must adhere to the same rules as attorneys,

17 and that if convicted, he could not appeal on grounds of ineffective assistance of counsel. (*Id.*, at p.

18 4). Petitioner was informed that he would be up against a prosecutor who had been trained in the

19 law, had experience at trial, and could make technical and strategic decisions, and that petitioner

20 would be at a significant disadvantage. (*Id.*, at pp. 4-5). The trial judge told petitioner that he would

21 not receive any special privileges at the jail law library. (*Id.*, at p. 5). Petitioner was told that he

22 would be arguing his own credibility and that the prosecutor would be able to present to the jury that

23 petitioner had prior criminal convictions. (*Id.*, at p. 7). The trial judge then questioned petitioner as

24 to his age, his extent of formal education, and whether he was taking any medication or other

25 substance that could affected his mental functioning. (*Id.*, at pp. 7-9). The trial judge informed

26

1   petitioner of the elements of the crimes with which he was charged and the possible penalties if

2   convicted of those crimes.  (*Id.*, at pp. 9-10).  To each of the trial judge's points, he asked petitioner

3   whether he understood and whether he still wanted to represent himself.  Petitioner answered in the

4   affirmative, that he did understand and that he wished to represent himself at trial.  (Exhibit 21).

5   Moreover, the trial court was unaware, at the time of the *Faretta* canvass, that the State later would

6   seek habitual criminal status against petitioner.  As such, error cannot be attributed to the trial

7   judge's failure to warn petitioner of a charge that had not yet been filed.  In this court's assessment,

8   petitioner's waiver was knowing and intelligent.

9        The Nevada Supreme Court's conclusion that the waiver of counsel was knowing and

10  voluntary was not contrary to United States Supreme Court precedent.  The factual findings of the

11  state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of

12  proving that the state court's ruling was contrary to, or involved an unreasonable application of,

13  clearly established federal law, as determined by the United States Supreme Court, or that the ruling

14  was based on an unreasonable determination of the facts in light of the evidence presented in the

15  state court proceeding.  This court denies habeas relief in this case.

16  **IV.  Certificate of Appealability**

17       In order to proceed with an appeal, petitioner must receive a certificate of appealability.  28

18  U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th

19  Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Pursuant to the

20  December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases,

21  district courts are required to rule on the certificate of appealability in the order disposing of a

22  proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and

23  request for certificate of appealability to be filed.  Rule 11(a).  Generally, a petitioner must make "a

24  substantial showing of the denial of a constitutional right" to warrant a certificate of appealability.

25  *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must

26

8

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The court will therefore deny petitioner a certificate of appealability.

**V. Conclusion**

　　**IT IS THEREFORE ORDERED** that petitioner's motion for a court order (ECF No. 44) is **DENIED AS MOOT.**

　　**IT IS FURTHER ORDERED** that the petition for a writ of habeas corpus is **DENIED IN ITS ENTIRETY**.

　　**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

　　**IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

　　　　　　Dated this ___9th___ day of February, 2011.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

9